# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

### NO. 03-02-00686-CR

**Karandal Benford, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT
NO. 9024186, HONORABLE BOB PERKINS, JUDGE PRESIDING**

### M E M O R A N D U M   O P I N I O N

Our opinion and judgment issued on January 21, 2005, are withdrawn, and the following opinion is substituted.

Appellant Karandal Benford was indicted by a grand jury of theft of an aggregated amount of more than $100,000 and less than $200,000, and for engaging in a criminal conspiracy to commit theft between $100,000 and $200,000, a second-degree felony. *See* Tex. Pen. Code Ann. §§ 15.02 (West 2003), 31.03 (West Supp. 2004-05), 31.09 (West 2003). The indictment alleged eighteen incidents of theft of computers and related items from February 1999 through January 2001; the State waived one of the allegations of theft after the evidence was presented and before the case was submitted to the jury. The jury found appellant guilty of twelve of the remaining seventeen allegations of theft of computer equipment amounting to between $100,000 and $200,000. The trial

court imposed punishment of forty-five years' imprisonment, enhanced by a prior conviction. On appeal, appellant contends contending that the trial court erred in admitting certain photographs and hearsay statements by appellant's alleged co-conspirators. We affirm the judgment of conviction.

**Factual Summary**

Between February 1999 and January 2001, there was a string of similar thefts from businesses around Austin. The thief would break a window for access and steal computer equipment, usually laptop computers. In December 2000, a security guard on his rounds at Tivoli Systems encountered an intruder. The intruder fled, leaving behind a broken window, laptop computers stacked by the window, and a backpack. In the backpack, the police found a receipt with appellant's name on it. The police questioned appellant and took a blood sample to compare to blood found at another burglary, left when the thief apparently cut himself on broken glass during the break-in. Appellant's blood matched the blood found at the crime scene, with a probability of the same profile appearing in the Caucasian population of 1 in 8.77 trillion, 1 in 7.46 trillion for African-Americans, and 1 in 4.52 trillion for Hispanics; appellant is African-American. In appellant's truck, the police found glass fragments, a spiral notebook containing a list of companies that had been robbed, and a spring-loaded "center punch," a device used to crack glass panes.

Detective Paul Brick testified that in November 2000 he obtained a search warrant for a company called Startech after receiving information that Startech was selling counterfeit computer software. During the search, the police seized a number of laptop computers from which serial numbers had been removed, and found that several of the computers matched those stolen

2

during the string of thefts. In February 2001, three months after the search warrant was executed, Startech's owners, brothers James and Nelson Wang, identified appellant from a photographic lineup, stating that appellant was the person they knew as Adam Davis and from whom they bought the stolen computers.

David Yanes, who was under indictment for burglaries of SBC Technologies and Cisco Systems, testified that he was friends with appellant, who went by "Adam," and helped appellant with the thefts in exchange for payments, usually about $500. Yanes testified that he and appellant were almost caught at Tivoli in December 2000 and that in their haste to flee, they left a backpack behind. Yanes was shown photographs from surveillance cameras at SBC and Cisco on the nights they were robbed. Yanes testified that both sets of photos were of him and appellant during thefts. Yanes also testified that appellant told him that someone at Startech told appellant which companies would be monitored and which ones were safe.

**Photographic Evidence**

Appellant complains that the trial court erred in admitting five photographs from the SBC surveillance camera into evidence, contending that the only authentication of the photos was through hearsay testimony and thus violated his rights to confront and cross-examine witnesses.

William Avery, an SBC employee, testified that when a security guard called him at home to report a break-in, he went to the building, where he saw that his laptop was missing and a window was broken. The security guard pulled a videotape from the surveillance cameras and Avery viewed the tape and then gave it to SBC's asset protection company. Avery believed the asset

protection company gave the tape to the police. Avery identified the photographs as still frames from the videotape and said they "fairly and accurately depict[ed] images that [he] saw on the videotape" "just within a few hours of pulling that tape from the" recorder. Avery did not compare the still photographs with the videotape and did not know who took the photographs. He saw one or two before trial, but had not seen all of them earlier. Appellant objected, raising concerns about authentication because Avery did not take the photos, was not involved in their taking, and did not know what became of the tape after he turned it over. The court overruled appellant's objections.

As a general rule, we review a trial court's decision on the admissibility of evidence under an abuse of discretion standard and will not reverse such a decision unless it "falls outside the zone of reasonable disagreement." *Jones v. State*, 944 S.W.2d 642, 651 (Tex. Crim. App. 1996). A trial court's decision as to whether evidence is properly authenticated or whether proper predicate has been laid is reviewed under the same standard. *See Angleton v. State*, 971 S.W.2d 65, 67 (Tex. Crim. App. 1998) ("standard of review for a trial court's ruling under one of the rules of evidence is abuse of discretion"); *see also Smith v. State*, 683 S.W.2d 393, 404 (Tex. Crim. App. 1984) ("sufficiency of a predicate is addressed to the discretion of the trial court and will not be reversed absent an abuse of discretion" and lay witness may give "opinion regarding things within his common knowledge"); *Drone v. State*, 906 S.W.2d 608, 611 (Tex. App.—Austin 1995, pet. ref'd) (discussing authentication of photograph). Evidence may be authenticated by witness testimony that "a matter is what it is claimed to be." Tex. R. Evid. 901(b)(1). An original of a photograph includes the negative and any prints made from the negative. *Id*. R. 1001(c). A duplicate is made from the

4

same "impression" as an original, including enlargement, re-recording, or another technique that accurately reproduces the original. *Id*. R. 1001(d). Originals are generally favored, but a duplicate may be admitted for the same use as an original unless a question is raised as to the authenticity of the original or if it would be unfair to admit a duplicate in lieu of the original. *Id*. R. 1002, 1003.

Initially, we note that appellant did not object to Yanes's testimony regarding the same photographs. Further, appellant did not attack the authenticity of the original videotape and raised no substantive concerns as to the authenticity of the photographs, arguing only that Avery was not involved in the making or developing of the photos. Appellant did not assert that the photos had been tampered with or reflected anything other than what the original videotape showed. Avery testified that he viewed the surveillance videotape almost immediately after the burglary was discovered and then turned the tape over to SBC's asset protection company and that the photos were fair and accurate representations of what he saw on the videotape. The trial court did not abuse its discretion in finding that the photos were sufficiently authenticated as to be reliable evidence. *See Smith*, 683 S.W.2d at 402-03 (witness testified that photographs actually depicted what they purported to depict and therefore no abuse of discretion in admitting photos); *Drone*, 906 S.W.2d at 611 ("A photograph may be authenticated by the testimony of any witness who has personal knowledge that the particular item accurately represents the scene or event it purports to portray."); *see also Huffman v. State*, 746 S.W.2d 212, 222 (Tex. Crim. App. 1988) (predicate for videotape or photograph need not be laid by photographer, subject of photograph, or person present when photograph taken, and any witness who observed the subject depicted in photograph may lay predicate). We overrule appellant's first issue on appeal.

5

**Hearsay Testimony**

Appellant next contends that the trial court erred in allowing Detective Brick to testify about the Wang brothers' statements in which they identified appellant from a photographic lineup as Adam Davis, the man from whom they bought computers with missing serial numbers. Appellant argues that those statements were hearsay and violated his rights to confront and cross-examine witnesses. The State contends that Brick's testimony about the Wangs' statements was properly admitted under the hearsay exception allowing for the admission of a statement contrary to the declarant's interest or tending to subject him to criminal liability. *See* Tex. R. Evid. 803(24).

It appears and we assume that the Wangs' statements should not have been admitted.[1] However, the presumed error was harmless in light of the balance of the evidence. We will assume that the Wangs's statements were testimonial in nature and that their admission violated appellant's constitutional rights of confrontation,[2] reversing unless we determine beyond a reasonable doubt that the error did not contribute to the conviction. Tex. R. App. P. 44.2(a) (standard of review for constitutional error). In making this determination, we "calculate, as nearly as possible, the probable impact of the error on the jury in light of the other evidence." *McCarthy v. State*, 65 S.W.3d 47, 55

---

[1] The Supreme Court recently held that the Sixth Amendment of the United States Constitution bars the use of out-of-court testimonial evidence against a defendant unless the State establishes that the witness is unavailable and that the defendant had an opportunity to cross-examine the witness. *Crawford v. Washington*, 541 U.S. 36, 51-53 (2004). The State did not show that the Wangs were unavailable to testify or that appellant was able to cross-examine them.

[2] *See Woods v. State*, No. AP-74,430, 2004 Tex. Crim. App. LEXIS 2146, at *17-18 (Dec. 15, 2004) (noting that *Crawford* did not define "testimonial" evidence). Although the Wangs did not make their statements during a "preliminary hearing, before a grand jury, or at a former trial," *Crawford*, 541 U.S. at 53, the record reflects that the Wangs made their statements to Brick during a police investigation. *See Crawford*, 541 U.S. at 53; *Lee v. State*, 143 S.W.3d 565, 570 (Tex. App.—Dallas 2004, no pet. h.).

(Tex. Crim. App. 2001). If there is a reasonable likelihood that the error materially affected the jury's deliberations, then the error was not harmless beyond a reasonable doubt. *Wesbrook v. State*, 29 S.W.3d 103, 119 (Tex. Crim. App. 2000).

In this case, there was significant evidence of appellant's guilt without taking the Wangs' statements into account: appellant and Yanes were caught on videotape at two different businesses as they stole computers; Yanes gave substantial testimony about the thefts with which he assisted; appellant's blood matched blood found at the scene of one theft; a receipt with appellant's name was found after an aborted theft; and the police found in appellant's truck a device for breaking windows, glass fragments, and a journal containing a handwritten list of several businesses from which computers had been stolen. Having considered the entire record, we conclude that there is no reasonable likelihood that the error materially affected the jury's deliberations and hold that the error was harmless. *Id*. We therefore overrule appellant's second issue on appeal.

### Conclusion

Having overruled appellant's issues on appeal, we affirm the trial court's judgment.

_____

David Puryear, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed: February 3, 2005

Do Not Publish

7